In the Matter of the Judicial Settlement of the Accounts of the Executors, etc., of HENRIETTA OLIVE LITTLETON, Deceased (With Regard to a Claim).

Surrogate's Court, Westchester County, June 28, 1927.

**Executors and administrators — claims against estate — decedent jointly with her husband executed a trust mortgage to secure the payment of thirty-six notes, totaling $100,000, one note being payable each year until 1960 — mortgagee not entitled to order directing executors to retain $30,000 for purpose of payment of any deficiency — Surrogate's Court Act, § 207, does not apply — mortgagee has not shown facts upon which contingent liability is based or probable amount — claimant is not creditor within Surrogate's Court Act, §§ 207, 314, subd. 3 — part of section 207 is unconstitutional.**

The claimant is a mortgagee under a trust mortgage executed by the decedent jointly with her husband to secure thirty-six notes, evidencing a debt of $100,000. One note was payable every year until the maturity of the loan on January 1, 1960.    The claimant seeks an order directing the executors to retain in their possession $30,000 for the purpose of being applied to the payment of any deficiency which may arise, should the trust mortgage be foreclosed, and it bases its claim upon section 207 of the Surrogate's Court Act.    Section 207 of the Surrogate's Court Act does not apply to the facts of this case and the executors will not be directed to retain the amount of $30,000 to apply to any possible deficiency.    Furthermore, if said section did apply, the claimant has failed to bring itself within such construction of the statute, since it has not submitted any " affidavit setting forth the facts upon which such contingent or unliquidated liability is based and the probable amount thereof."    Mere allegations of matters of opinion or conclusions contained in affidavits are not sufficient and it is necessary for the claimant in any case to set out the facts tending not only to show that a deficiency is likely to arise but also the probable amount thereof.

The claimant is not a creditor, having a debt against the decedent's estate, within section 207 of the Surrogate's Court Act, as that term is defined by subdivision 3 of section 314, and, therefore, section 207 is not applicable.

Furthermore, the first and last parts of the last paragraph of section 207, which was added in 1921, are unconstitutional and void, because they attempt illegally to interfere with property rights, are arbitrary, and violate the due process of law clause of the State and Federal Constitutions.

CLAIM based on section 207 of the Surrogate's Court Act.

*Hunt, Hill & Betts* [*Robert McLeod Jackson* and *Walter A. Peterson* of counsel], for the executors.

*Harry H. Bottome,* for the claimant.

*Taylor, Blanc, Capron & Marsh* [*Charles Angulo* of counsel], for the trustees.

*John J. Ackerman,* special guardian.

SLATER, S. In this accounting proceeding the New York Life Insurance Company was cited because the decedent jointly with her husband were makers of a deed of trust in the nature of a mortgage, conveying certain real estate situate in Loudoun county, Va., accompanied by thirty-six notes to evidence the debt of $100,000, each note being for $6,898, one being payable every year. The loan was made upon the amortization plan and matures January 1, 1960. The New York Life Insurance Company has filed with the executors a claim against the estate of the decedent, and requests that the decree shall direct that $30,000 be retained in the hands of the executors for the purpose of being applied to the payment of any deficiency which may arise, should the deed of trust be foreclosed. This claim is based upon section 207 of the Surrogate's Court Act, which, so far as relevant, reads:

" Whenever at the death of any person there shall be a contingent or unliquidated claim against his estate, or an outstanding bond, recognizance or undertaking upon which the deceased shall have been principal, surety, or indemnitor and on which at the time of his death the liability is still contingent or unliquidated, a claimant or a surety shall have the right to file with the executor or administrator of the estate of the deceased on or before the day named in the notice provided for in this section, an affidavit setting forth the facts upon which such contingent or unliquidated liability is based and the probable amount thereof, and there shall be no distribution of the assets of said estate without the reservation of sufficient moneys to pay such contingent or unliquidated claim when the amount thereof is finally determined. If before a final judicial accounting and a decree thereon such contingent or unliquidated claim or liability shall have become fixed and liquidated, then evidence of the same may be filed with the executor or administrator of the estate of the deceased in lieu of the contingent claim provided for; and such claim as fixed and liquidated shall be a debt of such estate. If such contingent or unliquidated claim has not become so fixed and liquidated, the decree on a final accounting shall direct that a sum sufficient to satisfy the claim, or the proportion to which it is entitled, be retained in the hands of the accounting party for such period or periods as the court may deem proper for the purpose of being applied to the payment of such claim when fixed and liquidated; and that so much of such sum as is not needed for such purpose be afterwards distributed according to law."

The quoted part of section 207 was the act of the Legislature of 1921, chapter 629.

A claim of this character is novel, as stated by the learned surrogate of Cattaraugus county in *Matter of Perkins* (122 Misc. 593).

The court knows of no other decision upon the question. That case had to do with facts indicating an apparent immediate deficiency upon the foreclosure of a mortgage. Even without the amendment of 1921 the court could and undoubtedly would have taken note of and provided against such a claim by withholding the decree. In the *Perkins* case the surrogate decided that section 207 of the Surrogate's Court Act, as amended, applied; that the claim was contingent, being one that the administrator should consider; that no final distribution of the personal estate should take place until the ultimate liability of the estate for any deficiency judgment in the foreclosure action was determined.

I am unwilling to follow that decision or apply it to the facts of the instant case. Surrogate SCHULZ, in *Matter of Taubin* (128 Misc. 515), had occasion to refer to section 207 of the Surrogate's Court Act.

It is contended by the claimant that the foregoing " claim " comes within the purview of section 207 of the Surrogate's Court Act, and constrains the surrogate to delay distribution, unless a definite amount be computed and reserved to pay the same. I do not so construe that section. " Contingent " and " unliquidated " refer to a " liability " of such a nature that the court can make a definite computation and as well a practical provision for securing its satisfaction. In the instant case no such computation or practical direction can be made. The claimant admits that the liability for which it contends cannot be computed before 1960, or until a default in payment of interest and principal takes place. The claim is contingent only in the sense that it may never crystallize into a liability. This court cannot keep an estate from liquidation for a quarter of a century to aid a claimant so improvident as to accept a security so indefinite and maturing, if at all, far beyond the period of the life of the obligor. The Legislature intended no such unreasonable purpose.

Just what the Legislature did mean by the amendment of 1921 is difficult to determine. I hardly believe that it meant for the court, upon the facts of the instant case, to withhold a sum of money until 1960 to determine whether there might be a deficiency. What would happen if the estate, other than the mortgaged real estate, consisted only of lands? How would that be held out? The section lacks the machinery for holding out real property. What would become of it? Who is to hold it? Who is to receive the income from it? Imagine an estate of $50,000, with the decedent liable upon $100,000 of mortgage bonds, still running and unpaid — or a case where a bond and mortgage is made upon the home — and it is sold subject to the mortgage and both mortgage and

property without the control of the estate, and the mortgage debt runs on for years, did the Legislature intend that the decedent's estate was to be withheld from distribution · indefinitely? The amendment of 1921 is altogether impracticable, unworkable, and it is impossible to reconcile it with the system described in respect to the settlement of estates of deceased persons. The system does not seem to be fully comprehended by the author of the amendment. It is more than a restatement of the unwritten law. The court's clear discretion is eliminated.

We will have to resort to the elementary canons of construction. The principal rule of construction is the intention of the Legislature. " The great fundamental rule in construing statutes is to ascertain and give effect to the intention of the Legislature.  *  *  *  But where the language of the statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves upon the court of ascertaining the true meaning. If the intention of the Legislature cannot be discovered, it is the duty of the court to give the statute a reasonable construction, consistent with the general principles of law."

Another cardinal rule of construction is that the legislative intent is to be determined from the provision of the act as a whole. Every statute is to be construed with reference to ·the general system of laws of which it forms a part, and must, therefore, be interpreted in the light of the customary or unwritten law, of other statutes on the same subject and of the decisions of the courts.

In *Seligman* v. *Friedlander* (199 N. Y. 373, 376) the court said: " Courts, however, presume that a radical change in the common law by statute, especially when the change affects title to property or rules of liability, will be expressed with the clearness which the importance of the subject demands, or so that its meaning is unmistakable. In the effort to discover the exact intention of a statute claimed to effect such a change, the history of legislation upon the subject will be carefully examined and all the statutes affecting it read together. Construction will not be based on a single section, which, when read by itself, appears to overturn a well-established principle of the common law, but that section will be read in connection with all the commands of the Legislature relating to the matter and the intention thus gathered from its command as a whole."

The case of *Johnson* v. *Corbett* (11 Paige, 265, 269), which was decided by Chancellor WALWORTH in 1844, throws considerable light upon the subject of the law, irrespective of statute. The chancellor said: " But the surrogate was clearly wrong in allowing

mortgage debts of the decedent, which were fully secured upon the real estate which had descended to his heirs, to be paid absolutely and unconditionally, out of the personal estate; pro rata with the debts of creditors, whose claims were upon the personal estate only. The revised statutes expressly charge the mortgage debts upon the mortgaged premises, in the hands of the heir or devisee, as the primary fund. (1 R. S. 749, § 4.) The object of the statute was not to deprive the mortgagee of any part of his debt, where the real estate, upon which it is a specific lien, is insufficient to pay the whole of the debt; including the necessary expense of foreclosure. All he can ask for, however, either at law or in equity, under the provisions of the revised statutes, is that the balance of his debt, beyond the value of the real estate upon which it is a lien, shall be paid out of the personal estate pro rata with the claims of other creditors. And that pro rata allowance should not be computed upon the whole mortgage debt, but only upon that part of it which is equitably chargeable upon the personal property. In other words, so much of the debt as can be raised out of the mortgaged premises, is to be considered as if it had been paid by the heirs at law; or by the decedent before his death. And the mortgagee is to come in, pro rata with the other creditors as to the residue of the debt; including what has already been paid by the administrators, out of the personal estate."

That case was cited with approval in *Erwin* v. *Loper* (43 N. Y. 521, 525); *Williams* v. *Eaton* (3 Redf. 503, 505); *Hauselt* v. *Patterson* (124 N. Y. 349, 359).

It would have been patently contrary to the rules of law thus obtaining to have allowed a mortgagee to prove his debt against the estate of the mortgagor excepting in so far as the mortgaged premises were insufficient to pay the debt. If section 207 of the Surrogate's Court Act is to be considered to mean that the holder of a mortgage executed by the decedent and not yet due can require the executor to hold the amount of the mortgage pending the ascertainment of a possible deficiency in the indefinite future, then not only would the statute be doing violence to the previous law on the subject but it would be the cause of great injustice. Indeed, any such construction would be so unjust and even absurd that we cannot imagine that the Legislature could have so intended. In fact the New York Life Insurance Company evidently does not claim any such intention on the part of the Legislature, else it would ask to have approximately $100,000 held by the executors, rather than the $30,000.

By seeking to show that the mortgaged premises are not worth

the amount of the mortgage and asking the court to hold a sum less than the amount unpaid on the mortgage, the New York Life Insurance Company apparently adopts the construction of the statute that the surrogate could direct the executors to hold the amount of a probable deficiency. The claimant has, however, wholly failed to bring itself within this construction of the statute because it has not submitted any " affidavit setting forth the facts upon which such contingent or unliquidated liability is based and the probable amount thereof." The allegations contained in Mr. Van Zandt's affidavit are mere matters of opinion and conclusions by one not shown to have any personal knowledge on the subject.

On the other hand, the claimant is bound by its own appraisal showing the value of the mortgaged premises in 1924 to have been $258,000.

Mr. Littleton testified that the property was bought for $265,000 and that $250,000 had been spent on it since. On this state of the record it cannot be said that the claimant has adduced evidence to satisfy the court that there would be any probable deficiency in case of a foreclosure. On the contrary, the record demonstrates the improbability of any deficiency.

The requirements of section 207 of the Surrogate's Court Act that the affidavit set forth " facts upon which such  *  *  * liability is based and the probable amount thereof," must require more than mere conclusion, for if that were all that was necessary, the mere affidavit as to the giving of the notes or bond and mortgage in question and the amount unpaid would be sufficient.

The provision should be construed as is the requirement of rule 113 of the Rules of Civil Practice giving the basis for a summary judgment, viz., " the affidavit of the plaintiff  *  *  *  verifying the cause of action." The meaning of this provision has been construed both by the courts in England and the courts in this State as requiring the evidential facts to be set forth with such particularity that the court shall be satisfied of the plaintiff's actual right to recover. For instance, Lehman, J., writing for the Appellate Term in *Sher* v. *Rodkin* (198 N. Y. Supp. 597) said (at p. 599): " The requirement of an affidavit ' verifying the cause of action ' means an affidavit which will enable the judge to determine whether the plaintiff has in fact a cause of action, which cannot be controverted upon a trial." *Hallgarten* v. *Wolkenstein* (204 App. Div. 487) is to the same effect.

The amendment of 1921 (Laws of 1921, chap. 629) may be divided into three sections. The first part relating to a contingent or unliquidated claim against an estate, or an outstanding bond, recognizance

or undertaking upon which the deceased shall have been principal, surety or indemnitor, which is still contingent or unliquidated, wherein a claimant shall have the right to file with the executor a notice setting forth the facts, the probable amount thereof and there shall be no distribution of the assets of said estate without the reservation of sufficient moneys to pay such contingent or unliquidated claim *when the amount thereof is finally determined.*

The third part of the amendment refers to a case where the contingent or unliquidated claim has not become so fixed and liquidated, the decree on final accounting shall direct that a sum *sufficient to satisfy the claim,* or the proportion to which it is entitled, be retained in the hands of the accounting party.

The claimant has not presented evidence before me in support of its claim, and the court cannot determine what is a sum sufficient to satisfy the claim, meaning, I take it, the court's idea as to what amount might become due in the event of a foreclosure and become a lien against the personal estate. The claim must be rejected as not being supported by evidence in behalf of the claimant.

Again, in the several sections of the Surrogate's Court Act with regard to rights of creditors in relation to real and personal property, the words " debts " or " claims " are used indiscriminately, and without regard to their legal meaning. (*Matter of Stiles,* 126 Misc. 715.)

The liabilities of a decedent must be treated as debts as distinguished from claims created by his representatives. Section 314 of the Surrogate's Court Act deals with " definitions of expressions used in this act." Subdivision 3 thereof says: " *The word ' debts ' includes every claim and demand, upon which a judgment for a sum of money, or directing the payment of money, could be recovered in an action;* * * * *the word ' creditor ' includes every person having such a claim or demand* * * *.*"

In *Wise* v. *Wedlake* (217 App. Div. 210) the court had occasion to refer to section 314 of the Surrogate's Court Act, subdivision 3, and characterized the word " debts " as follows: " The word ' debts ' as applied to claims against the estate of a decedent, *has a definite and somewhat limited meaning.* The word ' includes every claim and demand, upon which a judgment for a sum of money, or directing the payment of money, could be recovered in an action.' " A " debt " arises on some obligation of the decedent himself. It does not include liabilities incurred subsequent to his death. Consequently, the word " debt," wherever we find it in the Surrogate's Court Act, must be read and given the declared definition as above stated. Can it be said that the New York Life Insurance Company is a *creditor*, having a *debt* against the decedent's estate? Is it

Surrogate's Court, Westchester County, June, 1927.    [Vol. 129

ready and prepared to ask for a judgment upon a sum of money, or an order, or decree permitting the payment of money to be recovered in an action? Certainly not. Unless its contingent, or unliquidated claim becomes fixed and liquidated, pursuant to section 207, then it is not a debt against this estate at this time. Until a right exists there can be no remedy.

Decedents' estates are subject to the payment of debts and claims before the takers can ask for and obtain distribution. It is the balance of the estate that the distributees are entitled to, and until distribution it is held for them subject to the rights of debtors and claimants; debtors who are such within the definition as laid down in the Surrogate's Court Act, and claims for funeral expenses and expenses contracted by the administrator or executor in the services of the estate. Therefore, what is the purport of the first and third parts of section 207 as amended in 1921? What does it amount to? In my opinion it amounts to nothing whatsoever. The Legislature is without power and authority to reach out and attempt to withhold, or take the property of a distributee which is not subject to a *debt* as defined by the Surrogate's Court Act, or subject to a claim created by the executor or administrator. The first and third parts of section 207 in my judgment are unconstitutional and void because they attempt illegally to interfere with property rights.

The first and third parts of section 207, as amended in 1921, are arbitrary and of an usual nature and the " due process of law " clause of the State and Federal Constitutions intended to protect property from interference and confiscation by legislative enactment is violated. Everything that takes the form of an enactment is not to be deemed the law of the land, or due course of the process of law. This provision of the Constitution is a restraint on legislative will. In the instant case these paragraphs of the amendment are arbitrary, oppressive and unjust and against the settled system of law. The act of government in interfering with the enjoyment of a person's property must be tested by those principles of civil liberty and constitutional protection which have become established in our system of laws. Where rights of property are deemed to exist the Legislature cannot say they shall exist no longer. Property is placed by the Constitution in the same category with liberty and life. (*Wynehamer* v. *People*, 13 N. Y. 378, 393.)

Upon all the reasons set forth in this opinion, I shall disallow the claim of the New York Life Insurance Company and direct distribution of the estate.