In the Matter of the Estate of ROBERT J. STRASENBURGH, Deceased.

Surrogate's Court, Monroe County, June 26, 1933.

*Arthur G. Dutcher [Sutherland & Sutherland* of counsel], for the executor and trustee.

*J. Sawyer Fitch,* special guardian.

*Harris, Beach, Folger, Bacon & Keating [K. B. Keating* of counsel], for creditor.

*E. Reed Shutt,* for legatee.

*H. W. Ungerer,* for legatee and claimant.

*Bowman, Van Schaick & Woods [H. M. Woods* of counsel], for creditor.

*Whitbeck & Dye [E. C. Whitbeck* of counsel], for creditor.

*Hubbell, Taylor, Goodwin, Nixon & Hargrave [Lewis Clinton* of counsel], appearing specially for The Lincoln-Alliance Bank and Trust Company.

FEELY, S. In this proceeding, brought by the executor in January, 1932, to reclaim, as assets of the estate, certain lots of specific corporate stock that had been theretofore delivered to several legatees under the decree of intermediate judicial settlement made by this court on June 25, 1929, the existence of the following background or setting of undisputed fact has been assumed for the purpose of passing on the several motions made herein which challenged the power of this court to grant such relief against either the legatee or his pledgee. Testator died on March 23, 1928, possessed of a taxable estate of $1,493,423.92, on the transfer of which at his death an adjudicated tax of $54,376.29, was duly

paid to the State of New York, aside from the Federal tax. Thereupon and on June 6, 1929, this court decided the testator's testamentary gifts of this stock in his own company to his close associates therein were legacies of specific property (*Matter of Strasenburgh*, 136 Misc. 86; affd., 255 N. Y. 549), namely, 4,000 shares to his son Edward G., 400 to H. F. Snider, and 400 to F. M. Strohm. Another block of this stock, being 2,670 shares, given by the will to testator's widow, was decided by this court to have been likewise a testamentary gift of specific property. (*Matter of Strasenburgh, supra.*) This latter legacy occasioned a ruling in June, 1929, that this life tenant should give a restitution bond before receiving the principal subject of this legacy into her own hands. (*Matter of Strasenburgh*, 136 Misc. 91.)

Thereupon the liquidation of this estate progressed to the point where, a little over a year after testator's death and some five months before the general economic debacle and fall of 1929, an intermediate judicial settlement of this estate was had, resulting in the decree of this court on the 25th of June, 1929, in pursuance of which delivery was made of the several lots of specified stock that are now reclaimed. In the picture, as it appeared at the time of that decree, practically the only item of concern, as a source of possible future trouble, was the then contingent liability of testator as one of several indorsers on certain notes and mortgage bonds of corporations in which he and these indorsers held the stock and through which they were operating, outside their own regular line of business, in real estate, consisting of some downtown buildings, and some high grade tract developments in the residential section of Rochester.

Referring to the life tenant widow's restitution bond above mentioned, this court said (136 Misc. 86, 90): " It has been argued that there is a margin of solvency in this estate ample enough to make such bond unnecessary; in other words, that while it is possible, it is not probable, these contingent liabilities would ultimately require recourse to these specific legacies. * * * In these circumstances, the liquidation of the estate should not be closed by a total distribution unless an adequate bond is given by all the legatees, as retention of the residuary estate would not be enough to meet the possible liability in question." However, as regards the other lots of stock — the 4,400 shares given to testator's son Edward and his other business associates — the situation and prospects were then such that the decree recites a stipulation made by counsel for the family, or residuaries, that this primary block of 4,400 shares might be delivered to the three legatees, and no provision was made that they should first deliver a restitution

bond; but as regards the block of 2,670 shares going into the hands of the life tenant widow, the decree required the execution and delivery to the executor by the widow of a bond in the penal sum of $95,238, with the three children as her sureties, conditioned upon the failure to return to the executor said 2,670 shares of stock in the event that the other remaining assets of said estate in the possession of the executor are not ample and sufficient to pay all of the claims against said estate in full; and it was further decreed these shares themselves be put up as collateral to the bond.

It is clear, therefore, that even in those prosperous and care-free days, while the executor was not unmindful of the possibility that these contingent liabilities might some time develop into pressing demands on this estate, yet both the executor, the family and residuaries and all others concerned, then felt safe in surrendering, without bond, the 4,400 shares to the three business associates, and in transferring to the life tenant the 2,670 shares on the bond above mentioned; because they all thought the other remaining assets would be ample to satisfy any such demands that might be made. In choosing to take such course there was nothing irregular or improvident. The liquidation need not have been held up until each and every possibility — as distinct from probabilities — had been resolved. In *Matter of Littleton* (129 Misc. 845, 847) the surrogate, in so holding, said: " This court cannot keep an estate from liquidation for a quarter of a century to aid a claimant so improvident as to accept security so indefinite, and maturing, if at all, far beyond the period of the life of the obligor."

It is equally clear that there is nothing in the decree, either in itself or in its legal result, that detached from the legatees' acceptance, without bond, of the gratuity, consisting of the 4,400 shares, the concomitant liability to restore that much value to the estate or the testator's creditors, if and when necessary to satisfy those contingent liabilities, provided only the bar of the Statute of Limitations had not fallen before such demands matured and were pressed. This rests upon the first principle of all surrogate liquidation that a " testator must be just before he is generous." This condition inheres in every decree of settlement, be the decree otherwise as conclusive as may be. Ordinarily, such condition is necessarily implied in every distribution of a decedent's assets under a surrogate's decree of settlement, made in the reasonable and honest belief of solvency at the time; and in this decree of June, 1929, this condition is express, to the extent of the bond and family consent above mentioned. So, I have been unable to see upon what ground the learned counsel herein seem to treat this decree, in their briefs, as if it were absolutely absolute, free and clear of all

strings and comebacks. It is to effectuate such inherent condition, rather than to correct or vary anything in the decree, that the executor seeks to have it opened to the end that the inherent condition be enforced.

It is suggested that the payees and obligees having been made parties to the proceeding in which the decree of June, 1929, was made, and not having objected to the delivery of the stock made thereunder, are estopped, as well as are the family, the residuaries and the executor to ask for restitution. Excepting in so far as they all have allowed the right of innocent purchasers to intervene, the position of these payees was not changed by the decree any more than was the position of the widow, residuaries or others in interest. The transfer was none the less a gratuity, without any element of a good or valuable consideration entering into it. No consideration moved to the executor, the family, or other parties in interest. The possible change in the circumstances or *status quo* was to be anticipated, and is an aspect of the underlying condition of restitution above mentioned — which obtains until the rights of innocent purchasers intervene. The demand by the executor is based not only on its own liability as such, in the circumstances, but also on the joint nature of the contingent liability which now leans with its whole weight on this estate alone, because it has now been ascertained that this estate has exhausted its right of contribution as against the co-indorsers with testator, and there is still some of the liability pressing. All this comes back to the observation that the decree of June, 1929, was not only intermediate, but essentially conditional, no matter how conclusive it was in its intermediate character as to the particular items set forth in the account on which it was predicated.

This observation has anticipated somewhat the unforeseen developments of the facts in the course of the five months that followed the decree. It was to be expected, naturally, the specific legatees of the 4,400 shares might sell them; and they then acquired by and under the decree sufficient title upon which a purchaser from them, in good faith, might well rely. Their title was not, necessarily, a conditional one, but it entailed a contingent duty of restitution. The unforeseen development was that five months later there would be precipitated the general economic situation with which we are still struggling.

Meantime, and before this proceeding of reclamation was begun, the specific legatees of the 4,400 shares, except Mr. Snider, parted with the stock so given them, or pledged it; the executor and trustee retained the other securities and assets largely for the trusts under the will, and under the power therein conferred to carry on testator's

" non-legal " investments, and partly at the request of the family, especially, after the 1929 fall in prices; and the executor exhausted its right of contribution as aforesaid, with the result aforesaid, making necessary a return of these gratuities or their proceeds by the respective recipients — other than *bona fide* purchasers.

There is no evidence to justify a charge that the executor so acted in bad faith, or failed in its duty of due diligence in the circumstances. The main objection is that this court has no power to open the decree of 1929 and order restitution in proportion to the benefit received by the legatees named.

After having examined the authorities discussed in the briefs and by the text writers, I am of opinion this court has such jurisdiction, not only under section 40 of the Surrogate's Court Act, considering the conditional nature of the decree as aforesaid, but also under the case law generally; and especially the reasons underlying the decisions that are summarized in the Ruling Case Law (Vol. 11, p. 249), as follows: "An executor or administrator may distribute an estate notwithstanding the existence of liabilities which may possibly become debts, where there is no apparent likelihood of their becoming so, and, in the event of such liabilities becoming debts, may have recourse against the estate in the hands of the beneficiaries.

" Some of the authorities hold that whenever legatees have been paid their legacies, they will afterwards be bound to refund a ratable part, in case debts come in more than sufficient to exhaust the residuum after the legacies are paid. But the representative cannot compel legatees to refund the value of legacies delivered to them because the assets of the estate have proved insufficient to discharge its liabilities, unless he shows in addition that the deficiency was caused by debts which had not been presented to him, or that he had no notice or knowledge of such debts, or unless a depreciation in the value of the assets has unexpectedly occurred."

The latter condition has been universally verified in an unprecedented degree; and the distinction between it and the cases cited in some of the briefs where the deficiency was due to a devastavit or culpable default by the executor is too obvious for discussion. The authority last quoted continues: "An administrator's right to reimbursement from the distributees for a debt against the estate, which he has been compelled to pay after he has, in ignorance of the debt, made distribution of the estate, is not limited to payment out of the specific money or property received from the estate by a distributee. Any property belonging to the distributee, which is liable for his debts generally, may be subjected, but not for a larger amount than he has received from the estate. This procedure does not necessarily involve hardship, since whoever takes

a legacy must know that he takes it subject to the testator's liabilities, and takes the risk of its afterwards turning out that there are undiscovered liabilities. In refunding the amounts paid legatees the normal rules in regard to the order of liability of real and personal estate have application. For example, legatees who have received general or specific legacies from the personalty must refund the whole if necessary for the payment of debts, before resort can be had to the real property.

"Although the right to a refunding in proper cases is recognized, the law does not contemplate that property once turned over to devisees and legatees should continue to be specifically bound for any possible future deficiency."

It is for this reason that the delivery to the legatee vests him with sufficient title and possession whereon to base an innocent purchase of the specific property by a third person. A sale of such property by the legatee to an innocent purchaser does not relieve the legatee vendor from the obligation he incurred by accepting the gratuity from the testator, and hence, he remains just as liable to the estate for the " proceeds," as he would have been for redelivery of the specific property were it still in his hands. Any equity of the pledgor's, however, after the rights of the *bona fide* purchasers shall have been satisfied is something that cannot be directly pursued and collected in this proceeding; but rather on the foot of the decree and by proceedings supplementary to execution thereof as against the legatee pledgors. The decree herein cannot direct the innocent purchasers to liquidate their several claims in this stock collateral and thereupon surrender the equity or surplus to the executor for the purposes of this proceeding; nor should this proceeding be held up and continued until such outcome of the pledge shall have been ascertained.

Enter an order, on each motion, in accord with this decision.