In the Matter of the Estate of RICHARD W. HORNER, Deceased.

Surrogate's Court, New York County, November 15, 1933.

*Hann & Rapp*, for the petitioners.

*William J. McArthur*, for J. Milton Horner, administrator.

FOLEY, S. This is an application by the petitioner, an alleged contingent creditor of the estate, for a compulsory accounting. The petitioner bases her right to compel an accounting upon the fact that she is the owner and holder of a bond in the penal sum of $20,000, secured by a mortgage of $10,000, covering certain real property owned by the decedent in the State of New Jersey. The bond and mortgage were executed by the decedent on October 31, 1921. The principal thereof became due on or about October 31, 1922, but still remains unpaid.

The decedent died intestate on April 25, 1923, about six months after the bond and mortgage became due. He left him surviving as his only heirs and next of kin a sister, four brothers and certain nephews and nieces. Letters of administration were issued to the respondent on May 23, 1923. On June 6, 1923, an order was made directing the administrator to publish a notice to creditors of the decedent to present their claims against the estate. The first publication of the notice appeared on June 15, 1923, and the time within which to present claims expired on December 15, 1923. Proof of the publication of the notice has been filed in this court. No notice of claim was ever presented by the petitioner in compliance with the published notice. On April 21, 1933, approximately ten years after the time set for the filing of claims, for the first time, written demand was made by the petitioner for the payment of the principal due on the bond. It is alleged by the administrator that after the expiration of the time within which to present claims and

after the expiration of one year from the date of the issuance of letters, he paid all claims against the estate which had been filed with him, including funeral expenses and the expenses of administration, and distributed the balance of the personal estate of the decedent among the next of kin. On June 21, 1924, the next of kin executed and delivered duly acknowledged general releases to the administrator for their shares of the estate. The releases have been filed with the court. The administrator was never formally discharged as such by decree of this court. Shortly after the death of the decedent the mortgaged property was conveyed by the heirs at law of the decedent to one Clara Horner Rogers. Interest on the bond and mortgage has been regularly paid to date.

The application is denied. The real property is primarily liable for the mortgage debt. The property descended to the heirs at law of the decedent upon his death, subject to the mortgage executed by him. Our statute provides (Real Prop. Law, § 250): " Where real property, subject to a mortgage executed by any ancestor or testator, descends to an heir, or passes to a devisee, such heir or devisee must satisfy and discharge the mortgage out of his own property, without resorting to the executor or administrator of his ancestor or testator, unless there be an express direction in the will of such testator that such mortgage be otherwise paid." In the absence of proof to the contrary, we must assume that the law in respect thereto of the State of New Jersey, where the real property is located, is the same as in this State. In any event, so far as the personal estate is concerned, the laws of this State control. Before a mortgagee, therefore, can resort to the personal estate of a testator he must first exhaust his remedy against the real property and look to the general estate of the bondsman only for the deficiency. (*Olmstead* v. *Latimer*, 9 App. Div. 163; modfd. on other grounds, 158 N. Y. 313; *Halsey* v. *Reed*, 9 Paige, 446; *Johnson* v. *Corbett*, 11 id. 265; *Hauselt* v. *Patterson*, 124 N. Y. 349.) No action to foreclose the mortgage has ever been instituted by the petitioner nor has a deficiency judgment ever been obtained upon the bond. Until steps have been taken to obtain a deficiency judgment, she can in no event look to the personal estate of the decedent for the payment of her claim or any part thereof. (*Matter of Littleton*, 129 Misc. 845.) But even if a deficiency judgment on the bond should be recovered, I hold, in justice and in equity, that the administrator, in the absence of bad faith or fraud, may not be held personally liable for the amount thereof. The administrator in good faith distributed the personal estate of the decedent after the time to present claims against the estate had expired (Surr. Ct. Act, § 208), upon the belief that the value of the real estate was

amply sufficient to cover the mortgage. That the petitioner had a similar belief is evidenced by the fact that she forbore to sue upon the bond and mortgage for over ten years. Under these circumstances, whether or not the administrator had actual knowledge of the existence of the indebtedness is unimportant. (*Johnson* v. *Corbett, supra.*) To now hold the administrator accountable, should any deficiency arise upon a foreclosure sale, would create an unjustifiable hardship upon him. A very similar situation arose in *Johnson* v. *Corbett* (11 Paige, 265), decided in 1844, during a period when the depression in the value of real estate was like that existing at the present time. The reasoning of Chancellor WALWORTH in that case may well be considered and applied in the determination of the present matter. He stated: " The mere fact of knowledge on the part of the administrator, that a creditor held a bond against a decedent, which was secured by mortgage upon his real estate, would not of itself be sufficient to prevent the necessity of exhibiting his claim to the administrator. But where the administrator admits the validity of a debt against the personal estate, by paying the interest thereon from time to time out of the assets in his hands, it is tantamount to a formal presentment of the evidence of such debt, and an admission of its correctness, after a publication of the notice to creditors under the surrogate's order. \* \* \*

" I am satisfied, however, from the evidence, that if Corbett had proceeded to foreclose his mortgage immediately after the last payment became due, on the first of May, 1836, the real estate, upon which his mortgage was a lien, would have produced sufficient to pay the amount then due to him, together with both the prior incumbrances, and the expenses of the foreclosure and sale. For, with ordinary vigilance, the property could have been brought to a sale prior to the depression of real estate; which depression commenced with the financial embarrassment of the succeeding year. I have no doubt that this mortgagee, as well as the others, acted from the best of motives in not pressing the foreclosure of his mortgage to the injury of the heirs of the decedent; as property was then supposed to be rising in value. But it must be recollected that the administrators were also acting upon the same mistaken supposition, that the decedent would have ample property to pay his debts, and leave a large surplus for the heirs at law. There is no good reason, therefore, why the mortgagees who have waited until the mortgaged premises had so much fallen in value to accommodate the heirs and save them from loss, should throw the whole loss upon the administrator; who, in the meantime, had paid out the whole personal property for the payment of other debts, know-

ing that the real estate was then sufficient to pay the debts charged thereon. If it should unfortunately happen, that the real estate does not produce enough to pay the balance due upon Corbett's mortgage, the mortgagee must look for payment to the other real estate, if any there is, in the hands of the heirs at law; for whose benefit alone the delay in foreclosing the mortgage could, in any event, have operated."

The reasoning of Chancellor WALWORTH in his decision has been strengthened in favor of an administrator or executor by the amendment made in 1921 to section 207 of the Surrogate's Court Act. This section gives a contingent creditor the right to file an affidavit before the date named in the notice of publication of claims, setting forth the nature of the contingent claim. The section provides a mode of protection for the contingent creditor pending the determination of the liability of the estate upon the claim.

In my opinion, however, this amendment was also intended to protect the administrator or other representative of an estate where no contingent claim is filed in compliance with the section. Certainly, in a case where the representative has distributed the estate in good faith and in the absence of fraud, a contingent creditor is in no different position from a creditor who has an existing claim against an estate and fails to file it and thereby waives his right to assert it. Our legal system of administration contemplates orderly expedition in the distribution of an estate. The rights of creditors should be timely asserted, in order that the legatees or distributees may receive their shares of the estate within a reasonable time. In the language of Justice BRADLEY, in *Matter of Broderick's Will* (88 U. S. 503, at p. 519): " Parties cannot thus, by their seclusion from the means of information, claim exemption from the laws that control human affairs, and set up a right to open up all the transactions of the past. The world must move on, and those who claim an interest in persons or things must be charged with knowledge of their status and condition, and of the vicissitudes to which they are subject. This is the foundation of all judicial proceedings *in rem*." If an administrator or executor were required in every case where the decedent had signed a bond accompanying a mortgage on real estate to reserve a sum equal to the amount of the bond, the distribution of an estate might be postponed for many years. This would apply not only to real estate left by the decedent, but to real estate which he had sold in his lifetime subject to his personal bond.

The contingent creditor is, therefore, under a duty to assert his claim within the statutory period or before the distribution of the estate. Knowledge on the part of the administrator or executor

of a threatened or pending action to foreclose before distribution would necessarily require a postponement of distribution because of the possibility of a deficiency judgment. Where no notice of a contingent claim is filed or action brought, the representative is justified in distributing the personal property to the creditors and distributees. If unadministered assets should subsequently come into the hands of the administrator, or executor, the contingent creditor would, of course, be entitled to his right to an accounting and to the application of these assets to the debt where it is established by a deficiency judgment.

In the present estate there is no claim that there are additional unadministered assets and the contingent creditor in effect seeks to enforce an ultimate liability personally against the administrator. I hold, therefore, that an account by the administrator shall not be compelled, that it would result in an unnecessary and burdensome expense to the estate, and that the administrator cannot be charged with a personal liability.

The decision of the Appellate Division, Second Department, in *Kings County Trust Co.* v. *Derx* (237 App. Div. 548), is clearly distinguishable from the situation here. There the executors pleaded as a partial defense laches on the part of the mortgagee in failing to assert his claim for a period of twelve years. The executors attempted to assert an estoppel on the part of the mortgagee for failing to foreclose within that period. The defense was overruled. That case involved simply the right to recover a deficiency judgment against the estate. It is not authority for the right to compel an account before the judgment has been obtained, nor is it authority for holding that the administrator is personally liable for the judgment, when recovered, in the absence of assets applicable to the payment of the judgment or bad faith or fraud on the part of the administrator.

In the event of the recovery of a deficiency judgment by the mortgagee here, our statutes afford a remedy against the distributees who have received the personal property of the estate from the administrator. Section 170 of the Decedent Estate Law authorizes in such a situation the prosecution of an action and a recovery against the heirs at law and next of kin of a decedent to the extent of the moneys received by them from the estate. (*Field* v. *Suchman Corporation*, 135 Misc. 626; *Matter of Perkins*, 122 id. 593.)

Submit order on notice denying the application accordingly.