In the Matter of the Estate of N. EMMETT COSTON, Deceased.

Surrogate's Court, Steuben County, April 18, 1939.

*Robbins & Robbins*, for Pitt E. Coston, Mary E. Coston and Sabra Coston Wing, as executors, etc.

*Shults & Shults*, for Mary C. Acker, as executrix, etc., of Milo M. Acker, deceased, claimant and objector.

PRATT, S. The decedent, N. Emmett Coston, died January 14, 1924, leaving a will, which was duly probated January 15, 1924. Notice to creditors was published during the same year. On June 12, 1909, he executed under seal a bond and mortgage to Rachel A. Paxton for a mortgage indebtedness of $5,000, payable five years after that date with interest at five per cent payable yearly. December 7, 1922, the decedent conveyed the real estate covered by this mortgage to his son, Pitt E. Coston, also conveying other lands, and this conveyance was subject to the said bond and mortgage of $5,000, which Pitt E. Coston assumed and agreed to pay.

The said will gave and devised all of his property, real and personal, to his widow, Addie E. Coston, and the executors proceeded to administer the estate and pay all bills and all claims presented and turned over the property to the said Addie E. Coston prior to 1930. In 1930 the mortgage became in default for non-payment of interest and the property was sold for taxes to John B. Conderman, who received a tax deed, dated October 19, 1933, which he recorded July 24, 1934. Conderman gave notice to claimant herein and to others interested, requiring the interested parties to pay the unpaid taxes within six months and filed the notices and certificates with proofs of service upon the various parties interested, including the claimant herein, in the county clerk's office on July 24, 1934, showing service personally on the claimant herein on or before January 5, 1934. Conderman thereby acquired the property free from the mortgage lien.

The claimant thereupon brought suit in Supreme Court, Steuben county, against Pitt E. Coston and recovered a judgment for $6,067.36 damages and $19.48 costs, which was docketed September 21, 1934. Execution on this judgment was returned unsatisfied.

On April 16, 1935, the claimant filed a claim upon the executors for $5,000 and interest due and unpaid upon the said bond, this being the same claim for which judgment was obtained against Pitt E. Coston as aforesaid.

On April 23, 1935, the executors rejected the claim, alleging laches and that the Statute of Limitations had run against it.

The indebtedness being payable five years after date, the statute, however, did not commence to run until June 13, 1914. Under section 47 of the Civil Practice Act action on sealed instruments must be commenced within twenty years after the cause of action has accrued. Section 21 of the Civil Practice Act provides that " The term of eighteen months after the death within this State of a person against whom a cause of action exists * * * is not a part of the time limited for the commencement of an action against his executor or administrator." The twenty-year period from June 13, 1914, which would have expired on June 13, 1934, is, therefore, extended eighteen months, or until December 13, 1935, and the claim that the statute has run against this claim must be denied.

The filing of this claim tolls the statute. (*Matter of Schorer*, 272 N. Y. 247.)

This case especially overruled the decision in *Matter of Deitz* (134 Misc. 393), relied upon by counsel for the executors.

It is urged by counsel for the executors, however, that after the transfer of the property to his son, Pitt E. Coston, the decedent, N. Emmett Coston, thereupon became a surety instead of a principal on the bond, and that the acts of the parties since that time have been such as to release N. Emmett Coston, the decedent, and his estate from any liability upon the said bond.

Where a deed contains a covenant on the part of the grantee to assume and pay the obligation of a bond and mortgage existing against the premises executed by the grantor, the relation of principal and surety is created by the parties. (*Calvo v. Davies*, 73 N. Y. 211.)

If the agreement to pay contained in the bond is extended by express agreement and the surety does not consent thereto, the surety thereupon becomes released. Here there is no evidence of any agreement expressly extending the time of payment. The only evidence before the court is that certain interest payments were made from 1922 to 1930, inclusive. These payments, however, cannot be construed as an extension of the time to pay but as a mere acquiescence on the part of the claimant.

The executors urge the question of laches very strongly and this rule of equity requires careful consideration. A court of equity will compel a mortgagee of a decedent's property " to proceed in the first instance against the primary fund, the mortgaged realty, in recovery and satisfaction of his debt and permitting action by him against the personal representatives only thereafter and to the extent of any deficiency judgment obtained." (*Matter of Rosenbaum*, 157 Misc. 316, and cases cited. See, also, *Matter of Dell*, 154 id. 216.)

Surrogate FOLEY (*Matter of Horner*, 149 Misc. 695) puts it thus:

"Before a mortgagee, therefore, can resort to the personal estate of a testator he must first exhaust his remedy against the real property and look to the general estate of the bondsman only for the deficiency. [Citing several cases.] No action to foreclose the mortgage has ever been instituted by the petitioner nor has a deficiency judgment ever been obtained upon the bond. Until steps have been taken to obtain a deficiency judgment, she can in no event look to the personal estate of the decedent for the payment of her claim or any part thereof. (*Matter of Littleton*, 129 Misc. 845.)

"But even if a deficiency judgment on the bond should be recovered, I hold, in justice and in equity, that the administrator, in the absence of bad faith or fraud, may not be held personally liable for the amount thereof. The administrator in good faith distributed the personal estate of the decedent after the time to present claims against the estate had expired (Surr. Ct. Act, § 208), upon the belief that the value of the real estate was amply sufficient to cover the mortgage. That the petitioner had a similar belief is evidenced by the fact that she forebore to sue upon the bond and mortgage for over ten years. Under these circumstances, whether or not the administrator had actual knowledge of the existence of the indebtedness is unimportant."

In the instant case we have an even stronger situation. Here the decedent disposed of this parcel of real estate two years before his death, the payment of the mortgage being assumed by the purchaser, and the claimant made no claim against decedent's estate for more than eleven years. In the meantime payment of all debts, claims and expenses and the distribution of the personal and real estate was made, in accordance with the terms of the will. The real estate covered by the mortgage was evidently deemed by the claimant to be worth much more than the amount of the mortgage. The mortgage was long past due when decedent died and payment of principal had never been demanded. The claimant had notice of the tax proceedings and could have redeemed by payment of the taxes, or she could have foreclosed before the tax lien became final. This court must hold, therefore, that the claimant had slept upon her rights in neglecting to protect her own mortgage. She is now estopped from exercising her claim on the bond against the estate.

The court is not unmindful of the decision of a former surrogate granting the application for the accounting herein in which he partly distinguishes this case from the *Horner* case (*supra*). But on the application for the accounting the former surrogate did not attempt to pass upon the merits of the claim, merely on the right to the accounting.

One of the so-called moratorium acts requires brief consideration. Section 1077-b of the Civil Practice Act reads as follows:

" 1077-b. Actions on bonds for principal defaults suspended. No action shall be maintainable or judgment shall be entered during such emergency, upon any loan, indebtedness, bond, extension agreement, collateral bond, or other evidence of indebtedness or liability, whether or not such indebtedness or liability shall have been thereafter reduced, extended or modified, if the indebtedness originated or was originally contracted for simultaneously with such mortgage and is secured solely by such mortgage, or upon any guaranty of payment of the principal or installment or amortization of principal or any mortgage within the scope of section ten hundred seventy-seven-a or upon a guaranty of any obligation secured by such mortgage, *so long as no action or proceeding shall be maintainable to foreclose such mortgage.*" (Italics mine.)

No action is now maintainable to foreclose this mortgage. The words " action " or " proceeding " have often been held to include claims presented in Surrogate's Court. This section is cited not as determining the question involved here, although the language of the statute might permit such interpretation. It is, however, very significant of the trend of the times.

Claim is, therefore, disallowed and it becomes unnecessary to pass upon the objections to the account raised by the claimant.

Decree may be prepared disallowing the claim, passing the account and supplemental account, without costs.