In the Matter of the Estate of RALPH BRENNER, Deceased.

Surrogate's Court, Bronx County, June 27, 1939.

*Breitbart & Breitbart,* for the petitioner.

*William J. McArthur* [*Sunshine Ulman* of counsel], for Ira Brenner, as administrator, etc.

HENDERSON, S. The holder of a mortgage at the date of the decedent's death, who subsequently obtained a deficiency judgment upon its foreclosure against the estate and others, now moves to vacate or reopen the decree which settled the administrator's account and to permit the petitioner to file objections to the account.

On September 19, 1927, the decedent and others executed a bond to the petitioner's assignor in the sum of $7,000, maturing on September 19, 1928, and, as security therefor, a second mortgage

upon realty in this state owned by the decedent and his son Sol as tenants in common. The principal lien of the prior mortgage was $20,000. On October 15, 1928, the second mortgagee assigned the $7,000 bond and mortgage to the petitioner. The decedent died intestate on December 19, 1929, leaving a widow and five children. Letters of administration were issued by this court to his son, Ira. His gross estate consisted solely of his interest in a copartnership, conducting a butter and egg business under the firm name of R. Brenner & Sons at the mortgaged premises, and of said realty which had been treated by its cotenants as property of said copartnership. Upon his death, however, his undivided one-half interest therein descended to his five children, including his cotenant, subject to the dower of his widow, their mother. The copartnership had consisted of the decedent and two of his three sons, Ira and Sol. On October 20, 1930, the petitioner, the decedent's widow, the surviving cotenant, the latter's wife and the administrator as such, extended in writing the time for the payment of the bond and mortgage. On October 18, 1932, the maturity was further extended by another written agreement of the same parties to October 15, 1933. On January 21, 1933, the administrator filed his account which was judicially settled by decree on September 25, 1934. The copartnership was continued by the surviving partners with the consent of all the children who had waived their interest in the estate on condition that the copartnership would pay for the suitable support of the widow. The copartnership paid the widow $2,500 a year for about three years after the decedent's death, and thereafter about $1,500 per year up to March, 1938. The copartnership also paid the interest on the mortgage until August, 1937. The petitioner commenced an action in January, 1938, to foreclose the mortgage, and on July 19, 1938, obtained a deficiency judgment for $3,625.50 and interest against all the other parties who had executed the two extension agreements. On August 2, 1938, the petitioner served upon the administrator a notice of his claim for the amount of the judgment with interest.

The administrator did not publish any notice to creditors to file their claims. The mortgage holder was not cited in the proceeding to settle the administrator's account. The petitioner never filed any affidavit with the administrator prior to August, 1938. He never gave the latter any notice of any intention to claim any payment from the estate or to seek a reservation of estate funds to insure payment of any deficiency, before he commenced his foreclosure action in 1938. He knew that the estate was being administered when he executed the extension agreements. It is probable that he had no idea of a possible resort to the estate, for there was an apparent equity of considerable size in the mort-

gaged realty. When the decedent died, the aggregate principal secured by both mortgages on the realty was $27,000. The realty was assessed for tax purposes by the city of New York at valuations of $34,000 for 1930, 1931 and 1932, and of $25,000 for 1934. It was appraised for transfer tax purposes as worth $40,000 at the date of decedent's death. The administrator administered and distributed the estate and settled his account of proceedings in good faith and had good grounds for his belief that the value of the realty was ample security for both mortgages. The petitioner could have instituted a foreclosure action before or after the decedent's death. Instead he twice extended the time for the payment of the second mortgage. These extensions are even a greater indication that he shared this belief of the administrator than if he had merely left his mortgage open.

For years prior to 1921, when the last paragraph of section 207 of the Surrogate's Court Act was added by the Legislature (Laws of 1921, chap. 629), a mortgage executed by an owner of realty, as security for his bond, was not a charge, when he died seized of such realty, against his personal estate in the hands of his legal representatives which they were bound to recognize as a claim even if they had actual knowledge of its existence. (Real Prop. Law, § 250; *Matter of Dusenbery* v. *Bragg*, 241 App. Div. 553, 555, affg. *Matter of Rogers*, 142 Misc. 572.) That enactment in 1921 granted an opportunity to obtain new rights to the holder of a decedent's bond secured by his mortgage on realty owned by him and of which he died seized. If the holder considers his security inadequate, he is now permitted to file an appropriate affidavit with the deceased mortgagor's legal representatives and thus compel the latter to consider the possibility of a contingent liability as claimed in the affidavit. But such new rights are acquired only upon the filing of the affidavit. It is not until after such filing that such mortgage holder may ask the Surrogate's Court to direct a reservation of estate funds or seek payment of any deficiency from the legal representatives to the extent of the assets thereafter distributed by them.

The new statute, *ipso facto*, gave the holder of such a mortgage no new claim. It merely permitted him, if he saw fit, to file an affidavit alleging evidentiary facts demonstrating a probable deficiency in the mortgaged realty and to thus claim a possible resort to the personalty. There was and has since been no pertinent change in section 250 of the Real Property Law, and such a mortgage holder must still resort first to the realty before demanding any payment from the legal representatives of the deceased mortgagor. The affidavit is neither a claim nor a demand. Its filing is the statutory method of advising legal representatives that there

may be a deficiency whereby the holder will have a claim against the assets in the hands of the representatives at the time of filing or which thereafter may come into their hands.

If the holder does not file the affidavit, as permitted by the statute, within the statutory time to do so (Surr. Ct. Act, §§ 207, 208), or before a subsequent distribution by the mortgagor's legal representatives, the latter may rely upon such inaction as indicative of the holder's satisfaction with the adequacy of the realty. The new statute is a protection to legal representatives as well as to the holder of such a mortgage, and the holder is under a duty to assert his intention to claim satisfaction of any deficiency out of the estate by filing the required affidavit before distribution. (*Matter of Horner*, 149 Misc. 695, 699.) It requires an affirmative act on the part of such mortgage holder if he intends to resort to the personalty in the event of a deficiency in the mortgaged realty. (*Matter of Cronin*, 162 Misc. 370, 373.) No more responsibility or liability by virtue of this statute, rests upon such a mortgagor's legal representatives, in the absence of the mortgage holder's affidavit now permitted by the statute, than was theirs prior to its enactment. Unlike litigated claims or those that are not contingent, mere knowledge of such a mortgage is insufficient to charge the legal representatives with any duty in the matter. The existence of such a mortgage is neither a claim nor notice of a claim. The statute has changed the prior law only so far as to permit the holder of such an existing mortgage to turn his mortgage into a contingent claim by filing the statutory affidavit. If he does not file the affidavit, he remains in the same condition as if the statute had not been enacted — he has no claim whatever until he has obtained a deficiency judgment. Only upon filing the affidavit does he acquire a claim which the legal representatives may not ignore with impunity.

If the holder neither files the affidavit prescribed by the statute nor summonses the legal representatives in an action to foreclose the mortgage, before the statutory period to file claims or before the later distribution of the mortgagor's estate, he need not be considered as a claimant and is not a necessary party to a proceeding to settle the account of the legal representatives, although they have knowledge of the existence of the mortgage. (*Matter of Cronin, supra; Matter of Horner, supra; Matter of Melzak*, 153 Misc. 600, 601, 602.)

A contrary interpretation of the statute would work expensive injustice. Many estates are settled by family agreements without the costly recourse to judicial decrees. These settlements are greatly favored by the courts. If my construction of this statute is erroneous, the legal representatives of every decedent who left

realty subject to a mortgage executed by him, must account and cite the holder of such a mortgage, if they know of its existence, before they can distribute the estate without risk of personal liability, whether or not the mortgage holder had complied with the statute or has deemed his security adequate. I do not believe the Legislature so intended, especially in view of the legislative policy evidenced by section 250 of the Real Property Law. Because of such a family settlement here, there would have been no accounting in this estate, except for controversies over two claims for administration expenses which were settled during the accounting proceeding compelled by the owner of one of them.

*Matter of Riordan* (251 App. Div. 305) is not applicable here for it dealt with a direct obligation of the executors which had not been incurred by the decedent. It was there held that section 207 of the Surrogate's Court Act does not apply to such a claim.

The administrator executed both extension agreements, but such action upon his part could not increase the estate's liability with respect to the mortgage, beyond the limits set by section 250 of the Real Property Law as construed by authoritative decisions. Neither agreement was any notice or intimation to him that the petitioner had any idea of any deficiency in the realty as security for the mortgage.

The petitioner also contends that there has been no distribution of the personal estate.

A decree settling an account may be satisfied in the exact manner directed or by any other lawful method in which the interested payees or transferees may acquiesce. It is apparent here that the administrator distributed the assets payable under the decree to the widow and the next of kin, by paying them with the consent of the decretal payees to the decedent's surviving copartners under the latter's agreement with the other next of kin and the widow.

I hold that the administrator then distributed the estate in his hands and was discharged from further liability as to the assets embraced in the account and decree, and that this distribution occurred before the administrator had any knowledge of the claim now presented, sufficient to charge him with any duty in respect thereto. I also hold that the petitioner was not a necessary party to that accounting and that he is not entitled to an opening or a vacatur of the decree.

There is no allegation that any asset in addition to those embraced in the decree, has or should come into the hands of the administrator.

The provisions of article 7 of the Decedent Estate Law provide for any relief to which the petitioner may be entitled at this time.

Motion denied.

Settle order.