### In re RECKNAGEL et al.

(Supreme Court, Appellate Division, First Department. December 1, 1911.)

1. EXECUTORS AND ADMINISTRATORS (§ 226*)—NOTICE TO FILE CLAIMS.

The purpose of Code Civ. Proc. § 2718, providing for notice by executors to creditors, requiring them to file claims, is for the ascertainment of the debts of the estate and the protection of the executor; there being no absolute legal obligation on the executor to give it.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 806–810; Dec. Dig. § 226.*]

2. EXECUTORS AND ADMINISTRATORS (§ 231*)—ADVERTISEMENT FOR CLAIMS—BAR.

That executors advertised for claims by notice as provided by Code Civ. Proc. § 2718, did not bar a creditor, who failed to file his claim in accordance with the notice, from establishing the same at any time before the executor's final discharge.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 828, 829; Dec. Dig. § 231.*]

3. EXECUTORS AND ADMINISTRATORS (§ 233*)—CLAIMS—PERSONAL KNOWLEDGE.

Where a creditor of testator did not present his claim to the executor pursuant to an advertisement for claims until after the executor had procured a decree settling his account and distributing the residue of the estate in proceedings in which the creditor was not cited, such creditor could not compel a subsequent accounting by the executor without proving affirmatively that the executor had actual knowledge of the creditor's claim prior to the decree of settlement.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 831; Dec. Dig. § 233.*]

Appeal from Order of Surrogate, New York County.

Application by Anna M. Recknagel and others, as executrices, etc., of Carl L. Recknagel, deceased, to compel an accounting of the German Society of the City of New York, as executor of the estate of August Lachenmeyer, deceased. From a Surrogate's order directing the latter to file an account of its proceedings, it appeals. Reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, MILLER, SCOTT, and DOWLING, JJ.

Morgan J. O'Brien, for appellant.
Maxwell C. Katz, for respondents.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DOWLING, J.   The German Society of the City of New York, as executor of August Lachenmeyer, deceased, appeals from an order of the Surrogate's Court directing it to file an account of its proceedings as such executor; the petition therefor having been made by Anna M. Recknagel and Catherine E. F. Recknagel as executrices of Carl L. Recknagel, deceased.

The material facts are as follows: On November 4, 1893, Carl L. Recknagel recovered a judgment in the Supreme Court, New York County, against August Lachenmeyer. The former died in Kings county, state of New York, on January 3, 1900, leaving a last will and testament thereafter duly admitted to probate, whereof Anna Maria Recknagel and Catherine Elise F. Recknagel were named as executrices, and they qualified and continued as such. Lachenmeyer died at Heustadt-am-Hardt, Germany, on September 10, 1904, leaving a last will and testament, thereafter duly admitted to probate by the Surrogate's Court, New York County, wherein the German Society of the City of New York was named as executor. It qualified as such, and proceeded to administer the estate, in the course thereof commencing the publication, on or about June 16, 1905, of the notice to present claims pursuant to section 2718, Code of Civil Procedure; the date limited for such presentation being December 27, 1905. No claim was ever presented by the estate of Carl L. Recknagel to the executor of the Lachenmeyer estate. On August 4, 1909, the German Society made, rendered, and filed its account as executor of the Lachenmeyer estate, and upon its petition a citation was issued to the persons interested in the estate as named therein to attend the settlement of the account. Neither Lachenmeyer, his estate, nor the executrices thereof were named in the petition or the citation. Thereafter a decree of the Surrogate's Court was made on February 11, 1910, settling, allowing, and adjusting such account and decreeing distribution of the balance of the estate, in accordance with which the executor paid out all the funds remaining in its hands. Of the entry of this decree no notice was ever given to the petitioners herein, and they aver that they never had knowledge of any of the proceedings attending the accounting.

On September 30, 1911, this proceeding was begun to compel an accounting by the executor of the Lachenmeyer estate. The petitioners claim that the executor is bound to account to them on the ground that the decree is not conclusive as to them because of the facts hereinbefore set forth and because of the following allegation in the petition:

"That at the time of the filing said papers purporting to be such accounting, the said German Society of the City of New York knew of the existence of said judgment obtained against said August Lachenmeyer, deceased, by the said Carl L. Recknagel, deceased, and that the same was unpaid at said time."

This is denied by the German Society. If, then, the petitioners can establish such knowledge upon the part of the executor, prior to the time when it secured a judicial settlement of its account by a proceeding to which it failed to make the judgment creditor a party, can it now be compelled to account anew?

[1] The purpose of section 2718, Code of Civil Procedure, is the ascertainment of the debts of the estate. By section 2728 of the Code, the executor is required by his petition to pray that all creditors or persons claiming to be creditors of the decedent shall be cited to attend the settlement of his account. The notice to present claims is for the protection of the executor, and there is no absolute legal obligation to give it at all. Bullock v. Bogardus, 1 Denio, 276; Fliess v. Buckley, 90 N. Y. 286.

[2] The effect of advertising for claims is not to bar a creditor of the estate from establishing his debt at any time before the formal discharge by decree of the executor from his liability. Matter of Mullon, 145 N. Y. 98, 39 N. E. 821. In that case an executor, acting in good faith, had taken possession of the residuary estate left to him under the terms of the will, after paying the debts presented and all claims under the will, but without obtaining the judicial settlement of his account and direction for the application of the balance. He was held liable to the extent of the principal of the residuary estate only, for a debt of the estate which had not been presented before his personal use of his residuary legacy. The court there said:

"It cannot be doubted, we think, that a creditor, having an unpaid debt against a decedent not barred by the statute, is not precluded, by mere omission to present his claim pursuant to notice, from establishing his debt and demanding an accounting at any time before the executor or administrator is formally discharged from his trust. But where an executor or administrator, proceeding in good faith, he being also residuary legatee, applies to his own use the assets remaining after having paid all the claims under the will and all claims presented in usual course pursuant to notice, he cannot, we think, be held accountable, except for the actual value of the assets which formed a part of the testator's estate, nor can he be charged with the profits of a business into which he puts the money or property of the testator or intestate."

The "formal discharge from his trust" referred to can only be a due discharge, made after the provisions of the Code have been complied with.

In the Matter of Gall, 182 N. Y. 270, 74 N. E. 875, a creditor had filed a claim which was not rejected by the administratrix, but she proceeded to procure a decree judicially settling her account without citing the creditor, who thereafter commenced an action at law on his claim, which finally resulted in a judgment in his favor. It was held that the administratrix, by her conduct in distributing the estate without citing the creditor in her accounting proceedings, made herself personally responsible for the amount of his claim, and that she could not be heard to say that the statute of limitations protected her from the consequences of her own wrong.

In the Matter of Gill, 183 N. Y. 347, 76 N. E. 274, it was held that where an executrix had advertised for the presentation of claims against the estate of her decedent, and, at the expiration of the time thereby fixed, paid out to various creditors the entire estate, leaving nothing for distribution, but never obtained a decree settling her account and directing distribution, it was the absolute right of an unpaid creditor, who failed to present his claim until some two years

thereafter, to institute a proceeding for an accounting, for as the court said:

"The position assumed by the respondent on this appeal, that an estate can be paid out and wound up out of court and the creditors afforded no opportunity to scrutinize the proceedings of an executrix on a final accounting, has no foundation in law or equity."

Upon a subsequent appeal in the same case involving the accounting proceeding, the court said (199 N. Y. 155, 92 N. E. 390):

"We concur in the ruling of the courts below that the failure of the respondent to present his claim, in answer to the advertisement published in pursuance of the provisions of the statute, did not relieve the executrix from liability to him, even though she had distributed the whole estate. The protection afforded by the statute is only where the executor or administrator distributes in good faith. Here unquestionably she had knowledge of the respondent's claim, for she stated its existence in her account filed in proceedings taken against her by other creditors, and the distribution among those creditors was made on the basis of the existence of the respondent's claim. If she desired to avoid any liability to the respondent, she could have cited him to appear on the accounting made by her."

[3] It follows from the cases above quoted that if an executor, having advertised for the presentation of claims, has personal knowledge of the existence of a claim against the estate of his decedent, even if it be not presented to him, and proceeds to procure a decree settling his account and decreeing distribution without citing the creditor, he does so at his peril and must account upon the petition of such creditor. But the creditor has no such right to an accounting unless he can first affirmatively establish the knowledge of his claim by the executor. In this case the executor's knowledge of the existence of the claim is denied, and therefore that issue must be determined in favor of petitioners before an accounting can be ordered. The proceeding will therefore be remitted to the Surrogate's Court for such determination. It should be said, as well, that, if the petitioners succeed upon such hearing, the proper procedure is that prescribed in Matter of Killan, 172 N. Y. 547, 65 N. E. 561, 63 L. R. A. 95. There an administrator, who has distributed an estate in reliance upon a decree of the Surrogate's Court settling his account and directing distribution of the balance of an estate among the specified next of kin of decedent, who were his cousins, was held bound to account anew to a brother of decedent who had not been cited upon the accounting. The good faith of the administrator was not attacked, but it was held that the decree was void, as to the brother, as, while the court had jurisdiction of the subject-matter of the proceeding, it had never had jurisdiction of the party aggrieved. The Court of Appeals held that the petitioner therein had two remedies, either (1) to petition for an accounting in the Surrogate's Court, or (2) to commence an action in equity wherein the administrator and all parties in interest would be made parties defendant. In the case of the first proceeding it was said:

"The Surrogate was undoubtedly right in suggesting that the petitioner should give notice to the persons who appeared in and were affected by the original proceedings. The proper practice was not to dismiss the proceeding

instituted by this petitioner, but to require him to amend his citation, and bring in the parties who were cited or appeared on the original accounting."

The order appealed from is therefore reversed, with $10 costs and disbursements, and the proceeding remitted to the Surrogate's Court for action in accordance herewith.

LAUGHLIN, SCOTT, and MILLER, JJ., concur.

INGRAHAM, P. J. I concur with Mr. Justice DOWLING that the petitioner had no standing in court to require the executor to account without having first affirmatively established that the executor had knowledge of the petitioners' claim, and that the proper proceeding is that suggested in the opinion of Mr. Justice DOWLING. The question as to the right of a creditor to compel an executor to account who has already duly accounted before the Surrogate's Court, had his accounts settled by judicial decree, and the estate distributed under such decree, it seems to me must depend upon the good faith of the executor. The executor or administrator is authorized to advertise for claims against the estate of the deceased, and, if no claims are presented, he is then authorized to apply to the Surrogate's Court to have his accounts passed and the estate in his hands distributed, and as I understand the rule he is then protected from any subsequent accounting by creditors who have not presented their claims unless it is alleged and proved that he acted in bad faith. Undoubtedly an executor or administrator, who had personal knowledge of the existence of a claim against the estate brought home to him in the course of administration, although the claim had not been presented to him within the time fixed by the statute, would act in bad faith if he accounted for and distributed the estate without making the creditor a party to the accounting or providing for his protection. The executor in this case was a corporation, and it could have no knowledge of the existence of the petitioners' claim except a knowledge acquired by its executive officers in the discharge of the duties of the corporation as such executor of the deceased. The allegation in the petition is that, at the time of filing the said papers purporting to be such an accounting, the said German Society of the City of New York knew of the existence of the said judgment and that the same was unpaid at said date. How the corporation acquired notice of the existence of the judgment, or that it was unpaid, is not stated. Clearly the existence of the judgment would not of itself be sufficient notice of the fact to convict the executor of bad faith, and I am inclined to think that the mere allegation that the corporation knew of the existence of the judgment was not of itself sufficient to justify the Surrogate in requiring the executor to account. It seems to me that it was necessary to allege and prove that formal notice had been given to the corporation of the existence of the judgment so that it, as executor, had received such notice as bound it to protect the creditor's rights upon the final accounting. The mere fact that some officer of the corporation had acquired knowledge of the existence of the judgment, or that the corporation could be assumed to have had knowledge be-

cause of its existence as a public record, would not be such knowledge as would nullify the protection given to the executor in disbursing the estate under the decree of the Surrogate, but the knowledge must be such as was brought home to the executor while acting in that capacity to justify a finding of bad faith necessary to sustain the proceeding.