In the Matter of the Estate of REBECCA SHAFRAN, Deceased.

Surrogate's Court, Kings County, May 17, 1932.

*Jacob B. Eiseman,* for Herman Sukon, objecting creditor, petitioner.

*John P. Carroll,* special guardian.

*A. E. Robert Friedman,* for the executors, respondents.

WINGATE, S. The Shafran Realty Corporation was a family concern, the sole officers and stockholders of which were this decedent, the two executors, who were her sons, and her daughter. In May, 1928, it was the owner of certain premises at 545 West One Hundred and Sixty-second street, New York city. At about that time the objecting creditor in this proceeding was approached respecting a loan of $9,000 to the corporation on its bond and mortgage. He was unwilling to make this loan solely on the credit of the premises in question, or the financial responsibility of the corporation itself, and insisted upon receiving in addition a collateral indemnity bond executed individually by the decedent and her son Isadore, one of the present executors. This document was executed on May 2, 1928, and was witnessed by testatrix's daughter Miriam.

On the third of the following October the decedent died, and her will was admitted to probate and letters testamentary issued by this court on the thirty-first of the same month.

So far as is here material, the directions of the testamentary document provided for the payment of $3,400 in general legacies, mostly in sums of $100 each to various infant relatives, and directed the distribution of the residue among testatrix's three children. No notice for presentation of claims was published, but under date of December 5, 1929, this creditor sent notices by registered mail to the executors of the fact of his claim on the collateral bond.

On December 17, 1930, an action was commenced by a mortgagee whose lien was prior to that of this creditor, for foreclosure of his superior mortgage. This culminated in a judgment, entered on May 21, 1931, under which the property was sold under foreclosure, resulting in a deficiency judgment of upwards of $22,000, and wiping out the inferior mortgage security of this claimant. This creditor thereupon instituted an action against these executors on the bond and recovered judgments which were duly recorded on September 18 and 19, 1931.

Up to this time the executors had never filed an accounting of the estate of the decedent, wherefore this creditor petitioned for a compulsory accounting, which proceeding was later consolidated with a voluntary one.

The account, as filed, indicates that the estate has been wholly distributed, the general legacies, seventeen in number, being stated to have been paid on November 21, 1929, and the residue distributed in equal shares to the children of the decedent on August 18, 1930.

All of these alleged distributees, with the exception of four charities, whose benefits were $100 each, and the daughter Miriam, who received a legacy of $1,000 and a one-third share of the residue, were infants not only at the time of the alleged distribution, but at the time of the accounting. The first objection to the account is directed to the admitted fact that the executors paid over these sums to the respective fathers of the twelve infants without the appointment or intervention of a guardian and without any authorization by the court.

In support of the propriety of this payment, the executors cite section 271 of the Surrogate's Court Act, which in so far as here material, reads: "When a legacy * * * is payable to an infant or an incompetent, the decree or order shall direct that it be paid to his guardian or committee of his property, upon his filing sufficient security, unless the sum payable to the infant or to the incompetent does not exceed one hundred and fifty dollars, in which case the decree or order may order it to be paid to his father, or to his mother, or to some competent person with whom the infant or incompetent resides, or who has some interest in his welfare, for the use and benefit of such infant or incompetent. If there be no guardian or committee of the property, the decree or order shall provide that the sum payable to the infant or incompetent not disposed of in the manner aforesaid, shall be paid into or deposited with the surrogate's court."

Neither the executors nor the special guardian appointed for the infants on this proceeding have been able to point to any adjudication construing this statute as permitting a voluntary payment even for a sum less than $150 to a parent or other person interested in an infant without an order of court procured for that purpose.

All of the cases which have been found by the court in which this section has been construed, concern themselves wholly with objections interposed by or on behalf of infants in respect to payments of money belonging to them. (See *Davis* v. *Crandall*, 101 N. Y. 311, 320; *Lowman* v. *Elmira, C. & N. R. R. Co.*, 85 Hun, 188, 195; affd., 154 N. Y. 765; *Whitlock* v. *Whitlock*, 1 Dem. 160, 162; *Matter*

*of Hobson,* 61 Hun, 504, 514; affd., 131 N. Y. 575; *Matter of Recke,* 112 Misc. 673.)

In the last cited case, however, the court expressly holds (at p. 676) that where the total property to which an infant is entitled from an estate exceeds the statutory excepted value, no credit can be allowed to an executor who has made payment thereof, in the absence of the formal appointment of a guardian. This result is obviously correct under the wording of the statute, since it could by no stretch of the imagination be construed as giving greater power to the fiduciary than that which is granted to the court itself. It must follow, therefore, that the two payments of legacies of $500 each made by the executors to one of their number, namely, Isidore Shafran, for the benefit of his two daughters, Naomi Shafran and Bernice Shafran, were improperly made, and that the executors must be surcharged therewith.

So far as concerns the payments of the ten other legacies of $100 each to the parents of the other infant legatees, it is the opinion of the court that these also were improper, and that the executors cannot escape liability for sums paid in this manner. The phraseology of section 271 grants to the court merely a discretionary authority, and is in no sense mandatory, providing that under the specified circumstances " the decree or order *may* order " payments not exceeding $150 in amount to be made to an infant's father or mother " or to some *competent* person." (Italics not in original.) The permissive nature of the language indicates by inclusion of the direction for payment to a " *competent* person " the legislative purpose that a judicial act shall be performed, namely, that the fiduciary is to submit to judicial decision the question of whether or not the person to whom such payment is to be made possesses the characteristics coming within the definition of competency. Since, therefore, on a fair construction of the statute, an interposition by the court for a judicial purpose was apparently contemplated, the action of these executors in paying over the funds to the respective fathers of the infant legatees without obtaining such judicial determination was wholly unauthorized and improper. It follows that they must be surcharged with the sums so paid.

The next question for consideration relates to the payment of the $1,000 legacy to testatrix's daughter Miriam, and of the payments by the executors to her and themselves by way of residuary distribution.

It is, of course, well established, in spite of the provisions of section 208 of the Surrogate's Court Act, that a creditor having an unpaid claim against a decedent's estate is not barred by failure to present it from establishing his debt and demanding an accounting

from the fiduciary at any time before the latter is fully discharged from his trust. (*Matter of Mullon*, 145 N. Y. 98, 104.) The proceeding by this creditor in the present instance is, therefore, fully authorized.

As to whether or not section 208 will, under the facts of this case, furnish a defense for the executors against the established claim of this creditor, is really the basic question in the case. The section provides, in substance, that " if a claim against a deceased person be not presented to the executor * * * before the day fixed for presentation of claims in the notice to creditors, * * * or, if no notice be published, within one year from the date of issue of letters, the executor * * * shall not be chargeable for any assets or moneys that he may have paid in satisfaction of any lawful claims, or of any legacies, or in making distribution to the next of kin before such claim was presented." In spite of the precise wording of this statute it has uniformly been held that " the protection afforded by the statute is only where the executor or administrator distributes in good faith " without knowledge of the creditor's claim (*Matter of Gill*, 199 N. Y. 155, 157), and " that if an executor, having advertised for the presentation of claims, has personal knowledge of the existence of a claim against the estate of his decedent, even if it be not presented to him, and proceeds to procure a decree settling his account and decreeing distribution without citing the creditor, he does so at his peril, and must account upon the petition of such creditor." (*Matter of Recknagel*, 148 App. Div. 268, 272.) (See, also, *Matter of Ebenstein*, 116 Misc. 543, 548; *Matter of Purcell*, 137 id. 727, 729, FOLEY, S.)

It is unquestionable on the facts of this case that the executors were acquainted with the rights and contingent claim of this creditor since one of their number was a co-obligor on the bond which evidenced it, and the entire transaction was a family one.

The accountants here seek to escape the application of this usual rule by invoking the principles enunciated in *Matter of Weissman* (140 Misc. 360) and *Matter of Gellis* (141 id. 432). The situations existing in those cases and in the one at bar are, however, materially different. Those cases concern the proper method of proof of a contingent claim, the final obligation on which had not been determined. Whether the claim of a creditor be contingent or absolute, he is entitled to his day in court, on the question of the distribution of the assets of the estate. The mere fact that a claim against an estate is unliquidated, conditional or contingent, does not vary the essential basic fact that it is nevertheless a claim, and that the rights of the individual holding it are those of a creditor in the ordinary sense. These rights the fiduciary can knowingly disregard

only at his peril. Since, therefore, this objecting creditor had a claim against the estate of which the accounting fiduciaries were fully aware, it follows that the provisions of section 208 are not available to them as a bar.

The amount of the claim, as here proved, exceeds the total amount of the assets of the estate as distributed. It follows, therefore, that the petitioner's objections to the payment of the legacy of $1,000 to the daughter Miriam and of the several sums to the residuary legatees must be sustained as well as those to the payments made to the fathers of the infant legatees.

The final objection to the account relates to the failure of the executors to collect a debt of $300 from the Shafran Realty Company. In spite of the fact that this corporation was fully controlled by members of testatrix's family, it was nevertheless a separate legal entity recognizable as such in the absence of fraud. (*Matter of Richman*, 142 Misc. 103, 107, 108.) This being so, the question of the culpability of the fiduciaries in failing to collect this sum is one upon which the objector has the burden of proof. (*Matter of Richman*, 142 Misc. 103, 109; *Matter of Taft*, 143 id. 387.) In the opinion of the court, nothing has been here demonstrated which would warrant a determination that the fiduciaries were culpably negligent in failing to obtain this payment, and this objection is, therefore, overruled.

Proceed accordingly.