In the Matter of the Estate of FREDERICK A. SCHULZ, Deceased.

Surrogate's Court, Kings County, August 29, 1934.

*Frank E. Davis,* for the petitioner.

*Pickett & Pickett,* for the respondent Frederick Bischoff, individually and as executor, etc.

*Thomas E. White,* for the Fidelity and Deposit Company of Maryland.

WINGATE, S. Although he does not appear to realize the fact, the present accountant is impaled upon the horns of a dilemma. He admits the receipt of assets aggregating $6,790.32, against which he claims credits for alleged disbursements amounting to $6,597.45, leaving an apparent balance of $172.87 in his hands. Of these expenditures, however, $4,441.50 was for payments of mortgage principal and interest on premises 476 Seventy-sixth street, Brooklyn, which passed to him as sole heir at law upon the intestacy of the decedent.

In his memorandum the accountant emphasizes the point that it is no part of the duties of an administrator to pay post-mortuary charges against real estate which passes to an heir at law. As between the estate and the heir at law this is unquestionably true in the vast majority of cases. It may or may not be so as between the estate and the obligee of a bond secured by mortgage on real estate where the decedent was liable on the bond. In the present case the question is immaterial in any event, since the accountant seeks credit for $4,441.50 allegedly paid by him on account of this real estate in his representative capacity. If the principle which he invokes is applicable, it would logically result in the disallowance of this credit with a much less favorable result for him.

That the accountant was aware of the claim of the present objectant upon the bond of the decedent secured by mortgage on this property is demonstrated by the fact that on October 5, 1929, and again on January 3, 1930, he, in his official capacity, made payments on account of this obligation aggregating $521.50, and thereafter made seven similar payments by his individual checks, totaling $1,732.50. Under such circumstances, section 208 of the Surrogate's Court Act furnishes no defense to him when called to account by the unpaid creditor. (*Matter of Gill,* 199 N. Y. 155, 157; *Matter of Recknagel,* 148 App. Div. 268, 272; *Matter of Shafran,* 143 Misc. 754, 758.)

The bond and mortgage upon which the claimant's status as creditor of the estate is based were executed on February 27, 1926. The former, of course, constituted a personal obligation of the

decedent and became a contingent liability of his estate upon his death on August 30, 1929. The accountant at first in his representative capacity and later personally preserved this obligation in good standing until shortly prior to July 19, 1932, when the foreclosure action was instituted which resulted in the present deficiency judgment of $2,733.87. Until that time arrived, it was obviously impossible for the obligee on the bond to assert any absolute claim against the estate within the rule noted in *Matter of Gellis* (141 Misc. 432, 436) and *Matter of Weissman* (140 id. 360, 361), but the demonstrated knowledge of the accountant of the existence of and full facts concerning this claim removes any vestige of pertinancy from this fact.

It is entirely obvious that the accountant in his dealings with the estate substantially commingled its affairs with his own. He personally collected the proceeds of the four industrial insurance policies on the life of the decedent which, by their terms, were payable to the estate, and has not accounted for the proceeds thus received. Whereas, as between a creditor of the estate and the insurance company, such payment, by reason of the facility of payment clauses contained in the policies, is not open to attack (*Matter of O' Neill*, 143 Misc. 69, 74, and cases cited), the election by the company to make payment of the contract sums in this manner does not alter the ultimate ownership of the proceeds, which remains in the estate of the decedent, and the person receiving the payment must account therefor to the estate, receiving credit, where proper, for disbursements on account of the estate which have been made therefrom.

In the case at bar the administrator, in his individual capacity, collected the proceeds and testified on his examination in supplementary proceedings that he had used them in payment of the funeral expenses of the deceased. Here, however, he seeks credit for such payments from general assets admittedly in his hands, and fails to account for the insurance moneys. He must either be charged with the latter or denied credit for the former. Since the difference in amount is only three dollars and sixteen cents, the alternative to be adopted is substantially immaterial.

It follows that since the accountant was fully informed of the rights of the claimant, the failure of the latter to file a formal proof of claim is not available as a defense in this proceeding. Furthermore, that having received the proceeds of the industrial insurance policies which were assets of the estate, he must account for them. Since his general liability is established, it follows from the stipulation on the hearing that no credit can be allowed for the alleged payment of $352 to the Universal Credit Company.

*Matter of Horner* (149 Misc. 695), upon which the accountant relies, has no application to the facts at bar. It is readily distinguishable on grounds of equitable estoppel and that there the amount of the contingent claim had not been established.

The objections to the account will be sustained and the accountant surcharged with the sum collected on the four Metropolitan Life policies, aggregating $746.84, and with the Universal Credit payment of $352 — a total of $1,098.84.

Proceed accordingly.