In the Matter of the Estate of PETER F. REILLY, SR., Deceased.

Surrogate's Court. Kings County, December 23. 1940.

*Cullen & Dykman [Francis L. Durk* and *Joseph K. Ryan* of counsel] for Peter F. Reilly, Jr., and the Brooklyn Trust Company, as executors, etc., petitioners.

*Stewart & Shearer [J. Taylor Woodward* of counsel], for the United States Trust Company of New York, an objecting creditor.

*Paskus, Gordon & Hyman,* for Jacob Loewer, as administrator, etc., of Alice Loewer, deceased, legatee.

*James I. Cuff,* for Ruth Joyce, legatee.

*Charles K. Terry,* for Edna Adrian, legatee.

DODD, J., Acting Surrogate. The issue in this proceeding concerns the applicability to the situation here disclosed of the principles of law enunciated by the Court of Appeals in *Matter of Burrows* (283 N. Y. 540), decided on July twenty-fourth of the current year.

The present decedent died on January 18, 1936. At that time he was the owner of fifty-six parcels of real property which were appraised for estate tax purposes at approximately $660,000. All of this realty was specifically devised. His entire net personal estate, including tangible personal property employed in his business as warehouseman and otherwise, amounted to $30,961.63.

The expenses of administration of the estate aggregated $33,077.19, and accrued debts totaled $9,334.57. The Federal and New York State estate taxes amounted to $76,497.31.

At the time of the decedent's death the present objector, United States Trust Company of New York, was the owner by assignment of two bonds in the face amounts of $125,000 and $200,000 respectively, which had been consolidated by agreement and were secured by mortgages on premises 491–501 Bergen street, Brooklyn. Pursuant to the consolidation agreement, the due date of the indebtedness was extended to June 18, 1936. The decedent did not own the securing real estate at the time of his death, having previously conveyed its title. At the date of death, the principal of the mortgages had been reduced to $302,500.

Certain additional potentially interesting facts, whereas not appearing in the record, have been alleged in the briefs of the opposing parties and appear to be conceded. These are on the one hand, that since the date of death, all interest, amortization and taxes on the mortgage and the securing realty have been promptly

paid and the face of the consolidated mortgage obligation has been reduced to $280,000; and on the other, that the appraised value of the securing realty, as of the date of death, was $333,000, which would have permitted a maximum loan, legal for the investment of trust funds, of only $222,000.

By the " Seventeenth " item of the will, the executors were accorded a discretionary power of sale over the real property of the testator " including the real property * * * specifically devised, for any lawful purpose and especially for the purpose of raising money needed for debts, inheritance taxes and expenses of administration, and lawfully apportioning the same among the legatees and devisees respectively."

This authority was partially exercised by the executors in securing the funds necessary for the payment of the estate taxes. Certain of the devisees voluntarily contributed the moneys required for the payment of their shares of these imposts, doing so, it is asserted, by mortgaging the properties devised to them. Certain others, however, failed to co-operate with the executors in this regard, and for the purpose of securing the cash necessary to pay their shares, the executors partially exercised the discretionary power of sale accorded by the will and sold enough of the specifically devised properties to yield the funds for the solution of the tax exactions payable by the donees.

The only moneys presently in the hands of the accountants are the result either of a surplus of funds voluntarily contributed by the devisees for the solution of the tax obligations or from the sale for the same purpose of portions of the devised properties.

The holder of the unmatured mortgage obligation hereinbefore noted, the face amount of which is now reduced to $280,000, has filed a contingent claim in respect of this obligation, asserts that it is entitled to have a reserve fund of the entire $280,000 set up to secure it against any possible deficiency if and when the mortgage is foreclosed, and maintains that it was the duty of the executors to sell so much of the specifically devised properties as might be required for the accomplishment of this object. It further contends that since they failed to do this, they were guilty of a breach of duty and should be compelled to impound their own funds to this extent, to make good their alleged violation of fiduciary obligation.

The chief, if not indeed the sole, legal reliance for this position is predicated on the decision of the Court of Appeals in *Matter of Burrows* (283 N. Y 540), to which reference has been made. As is generally familiar to adepts in the subject of decedent devolution, this decision was an interpretation of the first sentence of the second paragraph of section 207 of the Surrogate's Court Act,

which reads as follows: "Whenever at the death of any person there shall be a contingent or unliquidated claim against his estate, or an outstanding bond, recognizance or undertaking upon which the deceased shall have been principal, surety, or indemnitor and on which at the time of his death the liability is still contingent or unliquidated, a claimant or a surety shall have the right to file with the executor or administrator of the estate of the deceased on or before the day named in the notice provided for in this section, an affidavit setting forth the facts upon which such contingent or unliquidated liability is based and the probable amount thereof, and *there shall be no distribution of the assets of said estate without the reservation of sufficient moneys to pay such contingent or unliquidated claim when the amount thereof is finally determined.*" (Italics not in original.)

Prior to the decision by the Court of Appeals in the *Burrows* case (*supra*), two varieties of issues had arisen respecting the interpretation of this enactment  The first was whether or not a fiduciary who was actually aware of the existence of such a contingent claim, which had usually come into being by reason of the assumption by the decedent of a mortgage obligation in the more or less remote past, could successfully ignore it, and cut off any rights of its holder by a judicial settlement, upon which the potential claimant had not been cited, followed by a distribution, or whether the usual rule should be applied in this connection, that a fiduciary could not be discharged, by a settlement and distribution, from accountability to the holder of an unpresented claim of which he had actual knowledge if he failed to cite the claimant. (*Matter of Gill*, 199 N. Y. 155, 157; *Matter of Recknagel*, 148 App. Div. 268, 272; *Matter of Huscher*, 251 id. 156, 157; *Matter of Van Bokkelen*, 140 Misc. 365, 368; *Matter of Hogan*, 147 id 112, 113; *Matter of Schulz*, 152 id. 601, 602; *Matter of Frommelt*, 154 id. 81, 82.)

In *Matter of Shafran* (143 Misc. 754, 758) it was determined that this usual principle should apply to a contingent claim of which the fiduciary possessed knowledge and this view was apparently indorsed by the Appellate Division for the First Department in *Matter of Riordan* (251 App. Div. 305, 308) on language quoted from this opinion.

Somewhat later, however, the learned surrogates in the First Department adopted a contrary view. (*Matter of Horner*, 149 Misc. 695, 697; *Matter of Cronin*, 162 id. 370, 373; *Matter of Brenner*, 171 id. 627, 630) which was applied by the Appellate Division for the Second Department in *Matter of Goldowitz* (258 App. Div. 62, 63).

The second question, upon which, prior to the Court of Appeals decision in *Matter of Burrows*, there was complete unanimity in all pronouncements on the subject by the *nisi prius* courts and the Appellate Divisions, related to the extent of the reservation of assets which should be made when a claim was actually presented which was predicated on a potential obligation which had not matured and the liability in respect of which, and if any, its amount, was a question which was incapable of definite ascertainment until some more or less distant time in the future.

The attitude of the courts in their approach to the problem was presumably influenced by the fact that substantially all of the claims of this variety were predicated on real estate bonds, liability in respect of which had been incurred or assumed by the decedent, often a generation before the claim was presented, the securing realty of which had in many cases long since passed from his ownership. In respect of such transactions, it was a matter of common knowledge that the lender had almost invariably relied solely upon the mortgaged realty as the security for advances which he might make and whereas the procurance of appraisals thereof prior to the making of the loan was standard procedure, any inquiry respecting the personal resources of the obligor on the bond in a first mortgage loan was so exceptional as to be substantially non-existent. It was accordingly a general feeling that since, in fact, the lenders had in the first instance looked only to the real property itself for the security of their loans, it bordered on the inequitable for them to be permitted to place the entire burden of the depreciation in realty values which attended and followed the depression upon the dependents or other distributees of a decedent who had chanced to be one of the owners in the chain of title during the continuance of the mortgage.

Despite these considerations, however, if an actual probable future deficiency in the value of the securing realty was discernible, the courts possessed no option but to enforce the terms of section 207 of the Surrogate's Court Act and deny distribution without the reservation of what was demonstrated before them to be " sufficient moneys to pay such contingent or unliquidated claim when the amount thereof " should be " finally determined." It was the universal opinion, however, that the statute neither required nor, indeed, authorized, them to impound more of the assets of an estate than was " sufficient " to satisfy such claim when " finally determined " so far as human foresight could evaluate the question. So to do, appeared an inequitable invasion of the rights of the dependents of the decedent in favor of one whose rights, in last analysis, were predicated on what was little more than a legal technicality and who, in any event, was receiving more than had

entered into his calculations at the time of the inception of the transaction. Any excess retention of funds was accordingly viewed as an invasion of the rights of distributees substantially equivalent to total deprivation, since if the mortgage interest, taxes and other charges in respect of the securing realty were punctually paid, the probable indefinite future continuance of the moratorium statutes would render impossible any actual fixation of the deficiency during the lifetime of those to whom the money rightfully belonged with the result that they would be totally deprived of its benefit.

As a result of these considerations and in supposed conformity with the mandate of the statute for " reservation of *sufficient* moneys to pay such contingent claim when the amount thereof " should " be finally determined " (italics not in original), all of the courts, upon the presentation of such a claim proceeded judicially to evaluate the composite situation and to make a determination of the sum of money which would be " sufficient " to satisfy in full the contingent claim after application to the satisfaction of the obligation, of the value of the real property from which its solution must primarily be sought. (*Matter of Littleton,* 129 Misc. 845, 847; *Matter of McIntyre,* 144 id. 177, 180; *Matter of Baldwin,* 157 id. 538, 545; *Matter of Quintana,* 158 id. 701, 702; *Matter of Goldowitz,* 171 id. 198, 201; revd., on other grounds, 258 App. Div. 62; *Doyle* v. *Graves,* 172 Misc. 838, 841.)

This practice was believed to be supported by the language of the statute itself which specified as a condition precedent to the judicial act of requiring a reservation of assets to be made, the filing of " an affidavit setting forth the facts upon which such contingent or unliquidated liability is based and *the probable amount thereof.*" (Italics not in original.) It was not believed that a claimant, by his mere *ipse dixit,* could compel the setting aside of a grossly excessive sum. If, however, this were to be avoided, it seemed inevitable that the required statement of " probable amount " should be subject to traverse with an inevitable consequence that the " probable amount " of deficit, reservation of which alone was to be required, under the language of the statute, must be made the subject of judicial determination.

With this background, the determinations in the *Burrows* case (*supra*) will be reviewed. As disclosed in the opinion in the Court of Appeals (283 N. Y. 540) and in an opinion of the surrogate relating to another phase of the same case (*Matter of Burrows,* 167 Misc. 1), the mortgage in question was in the sum of $2,000 and had been given in 1894. Its payment had been assumed by the decedent by an extension agreement. He owned the

property at the time of his death. The entire estate was devised and bequeathed to his executor, who died prior to distribution and the two estates were subsequently administered by the accountant. The assets in the hands of the latter coming from the estate of the obligor on the bond were in excess of the face thereof. The holders sought to prove the bond as a primary obligation of the estate. but " the surrogate dismissed the objections, treating the claim as one contingent upon the amount of a deficiency judgment which might be recovered in a foreclosure action * * *. To ascertain that sum the surrogate took testimony, offered on behalf of respondent only, to determine the fair and reasonable market value of the mortgaged property which could at some future date be set off against the amount due on the bond * * * Finding such value to be greater as of September 13, 1938, than the amount due. the surrogate directed the distribution of the estate without payment of the debt and without reservation of any sum for future payment of a possible deficiency judgment." (*Matter of Burrows*, 283 N. Y. 540, 542, 543.) This result was unanimously affirmed by the Appellate Division (258 App. Div. 807), but was reversed by the Court of Appeals by a six to one vote.

The reversing opinion proper starts with the statement (p 543): " The trustees are entitled to such a reservation of moneys." It then quotes excerpts from section 207 of the Surrogate's Court Act, and continues: " Section 1083-a of the Civil Practice Act has no application in this proceeding. By its terms it applies only to actions (See Civ. Prac. Act, § 7, subd 8.) It will become applicable, however, in view of the death of William F. Burrows and the applicable provisions of section 250 of the Real Property Law (Cons. Laws, ch. 50)."

The opinion thereupon traces the history of the enactment contained in section 250 of the Real Property Law, and continues:

" The mortgaged property is now the primary fund from which payment of the bond is to be sought before resort may be had to the executrix of the testator, unless there be a contrary express intention in the will. (*Hausell* v. *Patterson*, 124 N. Y. 349; *Erwin* v. *Loper*, 43 N. Y. 521, 525; *Rice* v. *Harbeson*, 63 N. Y. 493; *Matter of Glacius* v. *Fogel*, 88 N. Y. 434.)

" The trustees must, therefore, proceed first against the real property. If a sale of the real property satisfies the debt, the trustees have been paid in full. If it does not, then in the foreclosure action brought to reach the land, application may be made for leave to enter a deficiency judgment upon proper notice under section 1083-a of the Civil Practice Act, following foreclosure sale and delivery of deed. If such application be granted, then the

trustees may resort to the executrix for payment of the amount of such judgment. In the meantime, there is the clear command of the statute that ' * * * there shall be no distribution of the assets of said estate without the reservation of sufficient moneys to pay such contingent or unliquidated claim when the amount thereof is *finally* determined.' That will be after hearing has been sought and had under section 1083-a of the Civil Practice Act and an order entered thereon directing the entry of a deficiency judgment. Such reservation of moneys must be made by the executrix and must necessarily continue until (a) the expiration of the emergency period, or (b) the lapse of a reasonable time after the trustees have the right to foreclose the mortgage within the permissive provisions of the moratorium statutes and to continue the action to judgment and a sale of the premises." (Italics in original.)

It will be noted that the essential difference between the lower courts and the Court of Appeals respecting the interpretation of the section lies in the fact that the former stressed the word " sufficient," while the latter emphasized only the word " finally."

In evaluating the effect of the decision of the Court of Appeals and what the tribunal accomplished, it must be borne in mind that the reversal of the unanimous affirmance below must have been on the law (State Const. art. 6, § 7, first paragraph; *People ex rel. Manhattan R. Co.* v. *Barker*, 152 N. Y. 417, 438), with the result that the decision must be deemed to determine that in a case presenting the essential facts adjudicated in the *Burrows* case, the surrogate possesses no authority to decide the *quantum* of a reservation for a contingent claim, since if he possessed such authority to determine that less than the full face of the obligation was " sufficient " within the wording of the statute, he must, as a logical matter, also be authorized to decree that ten dollars or even one cent was adequate, and if the latter, then he could also, as the surrogate actually did in this case, find as a fact that " nothing " was sufficient, both on principles of logic and by application of the maxim *de minimis non curat lex.*

The inevitable result, therefore, appears to be that whenever an affidavit of contingent claim is presented in a case in which the assets in the hands of the fiduciary are equal to the asserted maximum thereof, the surrogate must direct an impounding of a sum equal to the face of the claim, to be held until the arrival of that possibly far distant future time when the obligee is able to foreclose the mortgage, it is ascertained by the event that the value of the securing property is not sufficient to satisfy the obligation and its holder obtains a favorable determination upon a possible application that a deficiency judgment be awarded to him.

The final question for determination is whether this rule is applicable upon the pertinent demonstrations of the present record. In the *Burrows* case (*supra*) the court expressly noted (p. 542) that " there are sufficient assets in the estate   *  *  *  to pay the debt," meaning, unquestionably, the contingent claim on the mortgage. Here that condition does not now, and never did, exist. On the uncontroverted facts the total assets which came into the hands of the executors were $2,115.56 less than the expenses of administration, which are preferred not only to the actual debts which were owing, but *a fortiori*, to this extremely nebulous claim, the maturing of which appears so remote as to be negligible as a practical business matter.

The real property is not now, and never was, an asset in the hands of the executors. (Surr. Ct. Act, § 202.) Its title passed direct to the specific devisees pursuant to the terms of the will, which had the effect of a conveyance. (*Waxson Realty Corp.* v. *Rothschild,* 255 N. Y. 332, 336; *Corley* v. *McElmeel,* 149 id. 228, 235; *Alfred University* v. *Frace,* 193 App. Div. 279, 284; *Milliner* v. *Morris,* 219 id. 425, 427; *Matter of Hackert,* 171 Misc. 139.) The funds contributed by certain of these devisees for the purpose of defraying the estate taxes on their shares were never general estate assets but were specially earmarked funds which were in essence placed in the hands of the executors, as agents, for a specific purpose and could not properly be diverted to other uses.

These facts appear to be substantially admitted by the claimant by reason of its complaint against the executors predicated on their failure to sell the specifically devised property pursuant to the authority accorded them by the will for the purpose of providing security for this extremely remote claim. If they actually possessed the power to do so, and actually aliened the unique possessions which real property is universally deemed to be, they would have inflicted a grave and presumably irreparable injury upon the devisees for the purpose of furnishing an additional security to this contingent claimant whose margin of safety according to its own admission of the appraised value of the securing realty is even now $53,000 or about twenty per cent more than the total face of its claim. To offset the obviously inequitable nature of its demands, it calls attention to the fact that such margin is less than that required for a legal investment of trust funds. It fails, however, to point to any provision of law which specifies that a devisee shall be deprived of his birthright for the purpose of supplying such additional margin of security.

When subjected to analysis, however, it appears doubtful that the executors possessed the authority under the will to sell the

specifically devised realty for any such purpose. The authority was accorded " for any lawful purpose and especially for the purpose of raising money needed for debts, inheritance taxes and expenses of administration." The meaning of the testator in the phrase " any lawful purpose " would appear to be limited by the specific enumeration following, on the principle of *noscitur a sociis*.

A claim of the variety here asserted is not a " debt " within the accepted connotation of that term as employed in the law of decedent estates, a " debt " being defined as " every claim and demand upon which a judgment for a sum of money, or directing the payment of money, could be recovered in an action." (Surr. Ct. Act, § 314, subd. 3; *Matter of Dimou*, 149 Misc. 83, 85; *Matter of Franks*, 154 id. 472, 473, 474. See, also, *Matter of Herle*, 165 id. 46, 54.) No judgment is capable of recovery in respect of the present claim and it is extremely improbable that it ever will be. In view of this fact and of the wholly discretionary nature of the authority accorded to the executors, their failure to subvert the dispositive wishes of the testator and inflict irreparable injury upon the devisees to accord further security for this nebulous claim does not, in the opinion of the court, supply any ground for just criticism of their conduct.

If the court is correct in its impression that the discretion accorded by the will is not sufficiently broad to authorize the executors to sell the specifically devised real property for the purpose of setting up a reserve to further secure this contingent claim, then the only possible alternative for their action in respect of the realty would be pursuant to the provisions of article 13 of the Surrogate's Court Act. This, however, in section 234 enumerates the objects for which real property may be sold, and this enumeration has been held to be exclusive. (*Matter of Cunniff*, 272 N. Y. 89, 92; *Personeni* v. *Goodale*, 199 id. 323, 332.) Sale for the purpose of setting up a reserve to secure a possible future claim is not included therein. On the contrary, the only remotely pertinent authorization is one for " the payment of debts." A sale under present circumstances would not be for a " payment " since, as hereinbefore developed, the claim does not constitute a " debt."

Since, therefore, the facts here presented are materially different from those adjudicated in *Matter of Burrows*, since there are not now, and never have been, any assets in the hands of the executors from which to erect a reserve fund for the further assurance of the amply secured contingent claimant, and none could, if at all, have been secured without inflicting irreparable injury upon the devisees, the objections of the holder of the contingent claim will be overruled.

Enter decree on notice in conformity herewith